**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION AT SANTA ANA**

**HONORABLE JOSEPHINE L. STATON, JUDGE PRESIDING**

**CERTIFIED TRANSCRIPT**

|  |  |
|---|---|
| PRESLIE HARDWICK, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| VS. ) | SACV NO. 13-1390-JLS |
| ) | |
| COUNTY OF ORANGE, ET AL., ) | |
| ) | |
| DEFENDANTS. ) | |
| _____) | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

SANTA ANA, CALIFORNIA

FRIDAY, MARCH 20, 2015

2:21 P.M.

**DEBORAH D. PARKER, CSR 10342**
**OFFICIAL COURT REPORTER**
**UNITED STATES DISTRICT COURT**
**411 WEST FOURTH STREET**
**SUITE 1-053**
**SANTA ANA, CALIFORNIA 92701**
**(657) 229-4305**
**TRANSCRIPTS@DDPARKER.COM**

APPEARANCES OF COUNSEL:

    FOR THE PLAINTIFF, PRESLIE HARDWICK:

              DENNIS R. INGOLS
              ROBERT R. POWELL & ASSOCIATES
              925 WEST HEDDING STREET
              SAN JOSE, CALIFORNIA 95126
              (408) 553-0200

    FOR THE DEFENDANTS, COUNTY OF ORANGE, ET AL.:

              NORMAN J. WATKINS
              PANCY LIN
              LYNBERG & WATKINS
              1100 TOWN & COUNTRY ROAD
              SUITE 1450
              ORANGE, CALIFORNIA 92868
              (714) 937-1010

1   **SANTA ANA, CALIFORNIA; FRIDAY, MARCH 20, 2015; 2:21 P.M.**

2              THE CLERK:  CALLING CALENDAR ITEM NO. 1,

3   SACV 13-1390-JLS, PRESLIE HARDWICK VERSUS COUNTY OF ORANGE,

4   ET AL.

02:21:15  5              COUNSEL, YOUR APPEARANCES, PLEASE.

6              MR. INGOLS:  DENNIS INGOLS, FROM THE OFFICES OF

7   ROBERT R. POWELL, ON BEHALF OF THE PLAINTIFF, WHO IS PRESENT

8   WITH ME IN COURT.

9              THE COURT:  GOOD AFTERNOON.

02:21:24 10              MR. WATKINS:  GOOD AFTERNOON, YOUR HONOR.

11             NORM WATKINS, PANCY LIN, ON BEHALF OF DEFENDANTS.

12             THE COURT:  GOOD AFTERNOON.

13             ALL RIGHT.  WE ARE HERE ON THE DEFENDANTS' MOTION

14  FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY

02:21:42 15  JUDGMENT, AND PLAINTIFF'S MOTION AS WELL.

16             AND SO, I'D LIKE TO GIVE EACH OF YOU THE

17  OPPORTUNITY TO BE HEARD.  LET'S GO AHEAD, AND -- I'M GOING

18  TO BEGIN WITH DEFENDANTS' MOTION, SO LET'S HAVE DEFENDANT

19  STEP TO THE PODIUM -- DEFENSE COUNSEL, AND --

02:22:04 20             MR. WATKINS:  THANK YOU, YOUR HONOR.

21             THE COURT:  ANYTHING YOU WOULD LIKE TO HIGHLIGHT

22  IN YOUR PAPERS, THAT'S FINE; OR ANYTHING THAT YOU THINK IS

23  NOT CLEAR.  IN OTHER WORDS, SOMETHING ALONG THOSE LINES,

24  THAT'S FINE.

02:22:17 25             MR. WATKINS:  I THINK OUR PAPERS ARE PRETTY

```
02:22:21   1  COMPREHENSIVE, AT LEAST AS I REVIEW THEM TODAY.  I DON'T SEE
           2  ANYTHING THAT JUMPS OUT AT ME AS MISSING.
           3           I JUST HIGHLIGHT A COUPLE OF THINGS:  FIRST, THE
           4  ISSUE OF QUALIFIED IMMUNITY, WHICH I THINK IS THE FIRST
02:22:38   5  ISSUE THAT WE ADDRESSED IN THE MOTION.  AS WE SEE IT, THE
           6  FAMILIAL ASSOCIATION CLAIM ARISING UNDER THE 14TH AMENDMENT,
           7  IT HAS BEEN ADDRESSED BY *A.A. COSTANICH*, WHICH IS CITED
           8  THROUGHOUT THE BRIEFING.
           9           THE COURT:  IT'S ALSO ADDRESSED IN *GREENE*, WAS IT
02:23:01  10  NOT?
          11           MR. WATKINS:  IT WAS.
          12           AND THE UNUSUAL THING ABOUT *COSTANICH*, YOUR HONOR,
          13  IS THAT WE HAVE THE NINTH CIRCUIT TELLING US WHAT WAS NOT
          14  ESTABLISHED IN THE LAW.  AND IT'S JUST -- IT SEEMS -- IT
02:23:21  15  SEEMS CLEAR THAT THE DISTINCTION -- THERE'S NO QUESTION, THE
          16  DISTINCTION THAT THE NINTH CIRCUIT WAS LOOKING AT WAS ONE
          17  BETWEEN CIVIL AND CRIMINAL IN CHILD ABUSE PROCEEDINGS.  AND
          18  GIVEN THAT DISTINCTION AND GIVEN THIS CASE, THERE'S NO
          19  QUESTION THAT BACK IN 2000 WHEN THESE EVENTS OCCURRED --
02:23:43  20           THE COURT:  *GREENE* WAS NOT A CRIMINAL CASE, WAS
          21  IT?
          22           MR. WATKINS:  I DON'T BELIEVE IT WAS.
          23           THE COURT:  ALL RIGHT.  IT WAS A CIVIL CASE.
          24           MR. WATKINS:  IT WAS.
02:23:49  25           THE COURT:  AND IT WAS DECIDED -- IT WAS DECIDED
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

| | |
|---|---|
| 02:23:55 1 | IN 2009 AND IT TALKED ABOUT A CLEARLY ESTABLISHED RIGHT. |
| 2 | WHY IS *GREENE* NOT MORE ON POINT THAN *COSTANICH*? |
| 3 | I THINK THOSE CASES ARE -- ALTHOUGH THE PLAINTIFF |
| 4 | SAYS THAT THEY'RE EASILY RECONCILABLE -- AND YOU CALL TELL |
| 02:24:10 5 | ME WHY YOU THINK THAT -- I'M NOT SO SURE THAT THEY'RE EASILY |
| 6 | RECONCILABLE, BUT *GREENE* SEEMS TO BE MORE ON POINT WITH |
| 7 | REGARD TO THESE PARTICULAR KINDS OF PROCEEDINGS: REMOVAL OF |
| 8 | A CHILD FROM BIOLOGICAL PARENTS. |
| 9 | MR. WATKINS: *GREENE* IS A 2009 CASE WHICH DOESN'T |
| 02:24:28 10 | DO MUCH HELP FOR US IN 2000. |
| 11 | THE COURT: WELL -- BUT IT TALKS ABOUT AN EARLIER |
| 12 | DATE WHEN IT WAS ESTABLISHED -- IT WAS CLEARLY ESTABLISHED |
| 13 | IN 2000, I BELIEVE, IS WHAT IT SAYS. |
| 14 | MR. WATKINS: I THINK THE REFERENCE IN THERE IS TO |
| 02:24:41 15 | A CRIMINAL PROCEEDING, THE 2000 PROCEEDING. I COULD BE |
| 16 | MISTAKEN, BUT I THINK THAT'S PRETTY CLEAR. |
| 17 | THE COURT: WELL, I THINK THE HOLDING WAS THAT |
| 18 | THIS PARTICULAR RIGHT -- IT WAS, IN *GREENE*, NOT A CRIMINAL |
| 19 | PROCEEDING -- WAS A RIGHT THAT WAS ESTABLISHED AS OF 2000. |
| 02:24:59 20 | THAT'S WHAT IT SAYS. |
| 21 | MR. WATKINS: WELL, THE LATER DECISION IN |
| 22 | *COSTANICH* CLEARLY TELLS US THAT UNLESS -- ABSENT SOMETHING |
| 23 | IN THAT OPINION THAT TAKES THAT CASE OUT OF THE CIVIL CHILD |
| 24 | ABUSE REALM, THE NINTH CIRCUIT IS TELLING US THAT FROM ITS |
| 02:25:27 25 | PERSPECTIVE, AT LEAST IN THE CIVIL SIDE, THAT THE RIGHT WAS |

| | | |
|---|---|---|
| 02:25:31 | 1 | NOT CLEARLY ESTABLISHED.  AND *COSTANICH* IS *COSTANICH*.  I |
| | 2 | MEAN, IT'S -- |
| | 3 | THE COURT:  UNLESS YOU CAN TELL ME WHY -- UNLESS |
| | 4 | YOU CAN DISTINGUISH THOSE TWO CASES AND TELL ME WHY THAT'S |
| 02:25:46 | 5 | NOT MORE ON POINT THAN THE *GREENE* CASE, WHICH INVOLVED A |
| | 6 | PLAINTIFF WHO HAD HER CHILDREN REMOVED FROM CUSTODY PURSUANT |
| | 7 | TO A JUVENILE COURT ORDER -- |
| | 8 | MR. WATKINS:  IF I MAY, YOUR HONOR. |
| | 9 | THE COURT:  -- I DON'T WANT YOU TO READ THE CASE |
| 02:26:03 | 10 | NOW AND TELL ME. |
| | 11 | MR. WATKINS:  OH, NO, NO, NO, NO.  I'VE GOT A NOTE |
| | 12 | FROM MY CO-COUNSEL. |
| | 13 | *GREENE* IS DEALING WITH A FOURTH AMENDMENT JUDICIAL |
| | 14 | DECEPTION CLAIM.  *COSTANICH* WAS DEALING WITH A FAMILIAL |
| 02:26:24 | 15 | ASSOCIATION CLAIM UNDER THE FOURTEENTH AMENDMENT.  THAT'S |
| | 16 | THE DIFFERENCE.  AT LEAST, THAT'S THE DIFFERENCE THAT WE |
| | 17 | SEE.  AND IN *GREENE*, IF I'M NOT MISTAKEN, IT RELIED ON |
| | 18 | *DEVEREAUX*, WHICH IS A CRIMINAL CASE. |
| | 19 | THE COURT:  BUT IT APPLIED IT TO CIVIL PROCEEDING. |
| 02:26:45 | 20 | MR. WATKINS:  IT APPLIED IT TO -- |
| | 21 | THE COURT:  AND IT SAID IT WAS ESTABLISHED AS OF |
| | 22 | 2000.  IT DID NOT MAKE THAT DISTINCTION THEN. |
| | 23 | MR. WATKINS:  UNDER THE FOURTH AMENDMENT CLAIM. |
| | 24 | LET ME TURN TO THE FOURTH AMENDMENT CLAIM, BECAUSE |
| 02:27:08 | 25 | I THINK THAT THE QUALIFIED IMMUNITY DOCTRINE APPLIES TO THAT |

| | | |
|---|---|---|
| 02:27:13 | 1 | CLAIM AS WELL FOR THIS REASON: THERE'S NO *COSTANICH* IN |
| | 2 | CONNECTION WITH THAT CLAIM. BUT WHAT WE KNOW -- AND IT'S |
| | 3 | NOT DISPUTED -- IS THAT IN THIS CASE, THE SOCIAL WORKER |
| | 4 | REMOVED THE CHILD PURSUANT TO AN ORDER DIRECTING HER TO DO |
| 02:27:31 | 5 | SO AND AN ORDER THAT SHE DID NOT SEEK. IT CAME *SUA SPONTE* |
| | 6 | FROM THE COURT. THERE ARE NO -- |
| | 7 | THE COURT: WELL, ISN'T THAT A QUESTION OF FACT? |
| | 8 | I MEAN, THERE WAS THE OFF-THE-RECORD DISCUSSION -- OFF THE |
| | 9 | RECORD; AND THEN, THE JUDGE MADE THAT DETERMINATION? |
| 02:27:53 | 10 | MR. WATKINS: THERE'S NO QUESTION THERE'S A |
| | 11 | DISPUTE ABOUT WHO SAID WHAT IN THAT FEBRUARY 15TH VISIT, BUT |
| | 12 | MY POINT IS A LITTLE DIFFERENT. |
| | 13 | THE COURT: OKAY. |
| | 14 | MR. WATKINS: MY POINT IS THIS: THAT AS OF 2000, |
| 02:28:04 | 15 | THERE WERE NO CASES DEALING WITH A SITUATION WHERE A SOCIAL |
| | 16 | WORKER WENT INTO COURT AND DID NOT SEEK A REMOVAL ORDER AND |
| | 17 | THAT FOR WHATEVER REASON THE COURT ORDERED REMOVAL AND THE |
| | 18 | SOCIAL WORKER MADE THE REMOVAL -- COMPLIED WITH THE COURT |
| | 19 | ORDER AND EFFECTED THE REMOVAL AND WAS THEN HELD TO HAVE |
| 02:28:27 | 20 | VIOLATED CONSTITUTIONAL RIGHTS. THERE WAS NO CASE LAW AT |
| | 21 | THAT POINT -- IN FACT, I DON'T THINK THERE IS TODAY -- |
| | 22 | SAYING THAT ABIDING BY OR EFFECTING A COURT ORDER CAN GIVE |
| | 23 | RISE TO A FOURTH AMENDMENT CLAIM. |
| | 24 | THE COURT: WHY -- WHY IS THAT THE ISSUE: ABIDING |
| 02:28:47 | 25 | BY A COURT ORDER? ISN'T THE ISSUE WHETHER THE COURT ORDER |

```
02:28:51   1   WAS OBTAINED THROUGH DECEPTION?
           2           MR. WATKINS:  THAT WOULD BE A FACTUAL ISSUE, NO
           3   QUESTION ABOUT IT.  THE QUESTION THAT WE'RE ADDRESSING ON
           4   THE QUALIFIED IMMUNITY FRONT IS WHETHER OR NOT IT WAS
02:29:02   5   CLEARLY ESTABLISHED.  ASSUMING FOR ARGUMENTS PURPOSES THAT
           6   THE SOCIAL WORKER DID MISREPRESENT THE FACTS, THE QUESTION
           7   THEN BECOMES:  WAS IT CLEARLY ESTABLISHED IN THE CONTEXT OF
           8   A FOURTH AMENDMENT CLAIM THAT A SOCIAL WORKER WHO SAYS
           9   SOMETHING THAT IS INCORRECT OR A MISREPRESENTATION BUT
02:29:24  10   NONETHELESS DOES NOT SEEK AND DOES NOT ASK FOR A REMOVAL
          11   ORDER AND THE REMOVAL COMES AS A RESULT OF *SUA SPONTE* ORDER
          12   FROM THE COURT --
          13           THE COURT:  BASED ON THE UNDERLYING DECEPTION?
          14   YOU HAVE TO ASSUME THAT, BECAUSE THOSE ARE THE FACTS.  AND
02:29:42  15   MAYBE EVEN BASED ON SOME SORT OF -- I'M NOT SURE WHAT THE
          16   SUBSTANCE OF THE ORAL COMMUNICATIONS WERE BEFORE THE COURT'S
          17   DECISION, BUT -- WHEN YOU SAY "NOT SEEKING AN ORDER," I
          18   DON'T KNOW WHAT THEY WERE SEEKING OR NOT SEEKING?
          19           MR. WATKINS:  NO, NO.  IT'S UNDISPUTED THAT THE
02:30:00  20   SOCIAL WORKER'S RECOMMENDATION TO THE COURT WAS THAT CUSTODY
          21   REMAINED WITH THE MOTHER.  THAT'S A WRITTEN SUBMISSION TO
          22   THE COURT.
          23           NOW, THE -- IN FACT, ONE OF THE CASES, AN
          24   UNPUBLISHED CASE CITED BY PLAINTIFF, MAKES A POINT THAT I
02:30:18  25   THINK DRIVES THIS HOME, AND THAT IS THIS *BAKER* CASE.  IN
```

| | | |
|---|---|---|
| 02:30:23 | 1 | THAT CASE THE COURT, IN DEALING WITH THE SIMILAR CLAIM, |
| | 2 | POINTED OUT AT THE END OF THE DAY THAT BECAUSE THERE WERE |
| | 3 | MULTIPLE THINGS IN FRONT OF THE COURT WHO ISSUED THE ORDER, |
| | 4 | IT WAS IMPOSSIBLE TO FIND THAT, BUT FOR THE ALLEGED |
| 02:30:41 | 5 | MISREPRESENTATION, THERE WOULD HAVE BEEN NO REMOVAL. |
| | 6 | WE HAVE THE SAME SITUATION HERE. THE RECORD IS -- |
| | 7 | AND I DON'T THINK IT WILL BE DISPUTED -- THAT IN ADDITION TO |
| | 8 | THE ISSUE OF WHO SAID WHAT TO WHOM ON FEBRUARY 15TH, WHICH |
| | 9 | WAS DISPUTED, THERE'S NO QUESTION THAT THE COURT WAS GIVEN |
| 02:31:02 | 10 | EVIDENCE THAT OTHER MISCONDUCT HAD OCCURRED IN THE NATURE OF |
| | 11 | MISSED VISITS, MISSED PHONE CALLS AND A MISSED -- EVIDENCE |
| | 12 | THAT THERE WAS DISCUSSION ABOUT ISSUES IN THE CASE WITH THE |
| | 13 | CHILD NOT INVOLVED IN FEBRUARY THE 15TH. |
| | 14 | SO, AGAIN, THE QUESTION IN THE QUALIFIED IMMUNITY |
| 02:31:27 | 15 | AREA IS: AS OF 2000, WAS THERE CLEAR CASE LAW IN THIS |
| | 16 | CIRCUIT THAT WOULD PUT AN OFFICER ON NOTICE OR A SOCIAL |
| | 17 | WORKER ON NOTICE THAT IN EFFECTING A COURT ORDER DIRECTING |
| | 18 | REMOVAL THAT IF ANYTHING WAS SAID IN THAT PROCEEDING THAT |
| | 19 | WAS FALSE, THAT YOU WERE VIOLATING A CLEAR PRECEDENT WHEN |
| 02:31:57 | 20 | YOU HAD NOT REQUESTED THE REMOVAL ORDER IN THE FIRST PLACE. |
| | 21 | THAT'S THE POINT, AND -- |
| | 22 | AND I THINK IT'S STILL TRUE TODAY. I DON'T KNOW |
| | 23 | THAT THERE ARE ANY CASES DEALING WITH THAT -- WITH THE |
| | 24 | POSSIBLE EXCEPTION OF THE UNPUBLISHED CASE THAT PLAINTIFF |
| 02:32:14 | 25 | CITED. |

| | | |
|---|---|---|
| 02:32:15 | 1 | IF I MAY TURN TO ABSOLUTE IMMUNITY? |
| | 2 | THE COURT: YOU MAY. |
| | 3 | MR. WATKINS: THANK YOU, YOUR HONOR. |
| | 4 | THE COURT: AND THERE YOU CAN TELL ME WHY IT IS I |
| 02:32:25 | 5 | SHOULD TREAT A SOCIAL WORKER LIKE A PROSECUTOR? |
| | 6 | MR. WATKINS: BECAUSE THERE ARE MANY, MANY, MANY |
| | 7 | CASES THAT SAY YOU SHOULD. |
| | 8 | THE COURT: IN ALL CONTEXTS? OR JUST IN THE |
| | 9 | INITIATION OF THE PROCEEDINGS? |
| 02:32:41 | 10 | MR. WATKINS: NO. IN VARIOUS CONTEXTS. SOME YES; |
| | 11 | SOME NO. THAT WAS THE POINT OF *BELTRAN II*, THE *EN BANC* |
| | 12 | DECISION. THE LAW HAD BEEN PRETTY WELL UNDERSTOOD UP TO |
| | 13 | THAT POINT IN TIME THAT ONCE A SOCIAL WORKER INITIATED A |
| | 14 | PETITION FOR DEPENDENCY THAT EVERYTHING THEY DID FROM THAT |
| 02:33:02 | 15 | POINT ON WAS COVERED BY ABSOLUTE IMMUNITY. IT WAS A |
| | 16 | HARD-AND-FAST RULE. |
| | 17 | AND THE WAY I UNDERSTAND *BELTRAN II, BELTRAN II* |
| | 18 | SAYS, *NOT SO FAST. IT ISN'T AUTOMATIC. IT DEPENDS ON THE* |
| | 19 | *FUNCTION THAT THE SOCIAL WORKER IS PERFORMING. IF THE* |
| 02:33:26 | 20 | *SOCIAL WORKER IS PERFORMING A FUNCTION THAT IS TYPICALLY* |
| | 21 | *QUASI-PROSECUTORIAL AND, YES, ABSOLUTE IMMUNITY APPLIES; AND* |
| | 22 | *IF NOT, NO, IT DOESN'T APPLY.* |
| | 23 | AND, FOR EXAMPLE -- |
| | 24 | THE COURT: SO IF A SOCIAL WORKER IS FABRICATING |
| 02:33:41 | 25 | EVIDENCE DURING THE COURSE OF INVESTIGATION, IT WOULD NOT |

| | | |
|---|---|---|
| 02:33:44 | 1 | APPLY? |
| | 2 |       MR. WATKINS: CORRECT. IF A SOCIAL WORKER GAVE |
| | 3 | FALSE AFFIDAVIT TO THE COURT, IT WOULD NOT APPLY. IN THIS |
| | 4 | SITUATION, IT'S VERY CLEAR THAT THE CLAIMED MISCONDUCT FELL |
| 02:33:59 | 5 | INTO NEITHER ONE OF THOSE CATEGORIES. THE CLAIMED |
| | 6 | MISCONDUCT WAS A STATEMENT TO THE COURT OFF THE RECORD, |
| | 7 | OR -- ACTUALLY, I THINK IT WAS ON THE RECORD, NOT UNDER |
| | 8 | OATH, MUCH THE SAME AS A PROSECUTOR WOULD MAKE PRESENTING |
| | 9 | ISSUES TO THE COURT EITHER BEFORE OR AFTER TRIAL ON A GIVEN |
| 02:34:19 | 10 | DAY. |
| | 11 |       THE COURT: WHY WOULD IT BE THE SAME AS A |
| | 12 | PROSECUTOR? |
| | 13 |       I MEAN, I DON'T SEE THE SOCIAL WORKER ACTING AS A |
| | 14 | PROSECUTOR OR IN A QUASI-PROSECUTORIAL FUNCTION, NUMBER ONE. |
| 02:34:32 | 15 |       NUMBER TWO, I DON'T SEE THAT THE PLAINTIFF IS |
| | 16 | NARROWING WHAT THEIR CLAIM IS IN THE WAY YOU ARE. |
| | 17 |       DO YOU SEE THAT THE ONLY CLAIM THEY'RE MAKING IS |
| | 18 | THE SINGLE STATEMENT TO THE COURT OFF THE RECORD? THAT'S |
| | 19 | THE SCOPE OF THE LITIGATION? |
| 02:34:50 | 20 |       MR. WATKINS: I THINK THEY'RE MAKING SEVERAL |
| | 21 | CLAIMS: ONE, THAT STATEMENT; TWO, THE CLAIM THAT THERE WAS |
| | 22 | A FAILURE TO PRODUCE EXCULPATORY EVIDENCE. AND WE'VE CITED |
| | 23 | IN OUR BRIEF A CASE DIRECTLY ON POINT, AND I THINK IT'S -- |
| | 24 | MAYBE *KALINA*, OUT OF THE U.S. SUPREME COURT, THAT RECOGNIZES |
| 02:35:16 | 25 | THOSE AS PROSECUTORIAL FUNCTIONS ENTITLED TO THE IMMUNITY. |

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
02:35:27   1              TURNING, IF I CAN, TO --
           2              WELL, BEFORE I LEAVE THAT, THE COURT MENTIONED
           3   FALSIFYING EVIDENCE IN AN INVESTIGATION.  I DON'T THINK
           4   THERE'S ANY DISPUTE.  IN FACT, THE COMPLAINT ITSELF ALLEGES
02:35:42   5   THAT THE INVESTIGATION -- STATES THAT THE INVESTIGATION WAS
           6   COMPLETE WHEN THE ALLEGED MISCONDUCT OCCURRED.  AND IT WAS.
           7   THAT'S REALLY NOT A DISPUTE.
           8              NOW, WITH RESPECT TO MONELL, HERE IT'S JUST A
           9   FAILURE OF PROOF.  THERE'S NO EVIDENCE OF ANY POLICY, OR
02:36:04  10   CUSTOM, OR PRACTICE FROM THE BOARD OF SUPERVISORS.
          11   CERTAINLY, THERE'S NO EVIDENCE OF MULTIPLE INCIDENTS THAT
          12   WOULD BE SUFFICIENT TO ESTABLISH A POLICY OR A CUSTOM OR
          13   PRACTICE.
          14              THE EVIDENCE IN THIS CASE, AS WE'VE POINTED OUT,
02:36:28  15   IS SIMPLY AN ALLEGATION AND THEN, THERE'S REFERENCE TO SOME
          16   DISCOVERY RESPONSES THAT WERE MADE IN THE MOTHER'S CASE AND
          17   THOSE DISCOVERY RESPONSES ALL ONLY ACKNOWLEDGE COURSE AND
          18   SCOPE.  SAY, YES, I WAS ON DUTY WHEN THESE EVENTS OCCURRED.
          19              AND WE'VE CITED TO AN UNPUBLISHED DECISION OR
02:36:54  20   ORDER FROM THIS COURT, ACTUALLY, WHICH ADDRESSED THAT
          21   PRECISE POINT SAYING, *YOU KNOW, AN OFFICER SAYING, YES, I*
          22   *WAS ACTING PURSUANT TO MY DEPARTMENT'S POLICIES IS AN*
          23   *ACKNOWLEDGMENT THAT I WAS ACTING WRONGFULLY PURSUANT TO*
          24   *THOSE POLICIES.*
02:37:12  25              THE COURT:  I'M GOING TO STOP YOU.  I CAN'T RECALL
```

```
02:37:14   1    EVERY CASE I'VE DECIDED.  WHEN YOU SAY "THIS COURT," DO YOU
           2    MEAN ME?
           3            MR. WATKINS:  NO, NO, I DON'T.  I'M SORRY.
           4            THE COURT:  OKAY.  THERE'S NO SUCH THING AS "THIS
02:37:20   5    COURT," OTHER THAN ME.
           6            MR. WATKINS:  I'M SORRY, YOUR HONOR.  I MEANT OUT
           7    OF THIS DISTRICT.
           8            THE COURT:  OUT OF THIS DISTRICT.
           9            OKAY.  THE NINTH CIRCUIT IS ONE ENTITY.  IF ONE
02:37:27  10    PANEL HOLDS SOMETHING, EVERYBODY ELSE IS BOUND BY IT.  I'M
          11    NOT BOUND BY SOMETHING SOMEBODY ELSE SAID THAT'S A DISTRICT
          12    COURT.  BUT IF IT WAS ME, I WOULD WANT TO KNOW AND YOU COULD
          13    TELL ME THAT.
          14            MR. WATKINS:  I'M SORRY, YOUR HONOR.  NO, NO.  AND
02:37:38  15    WE CITED IT IN THE BRIEF.  IT'S JUDGE TAYLOR.
          16            BUT ANYWAY -- AND WE INCLUDED IT IN THE BRIEF,
          17    BECAUSE IT WAS JUST A THOUGHT.  IT JUST WENT RIGHT TO THAT
          18    THE POINT.
          19            SO UNLESS THE COURT HAS ADDITIONAL QUESTIONS --
02:37:56  20            THE COURT:  I DON'T THINK I HAVE ANY MORE
          21    QUESTIONS FOR YOU, RIGHT NOW.
          22            I HAVE SOME QUESTIONS, PERHAPS, FOR THE PLAINTIFF.
          23            MR. WATKINS:  THANK YOU VERY MUCH, YOUR HONOR.
          24            THE COURT:  THANK YOU.
02:38:09  25            I'M GOING TO START WITH YOU WHERE WE JUST ENDED
```

```
02:38:13   1   WITH DEFENSE COUNSEL, AND THAT'S ON THE MONELL CLAIM.  I'M
           2   WONDERING WHAT IS THE POLICY, CUSTOM, OR PRACTICE, BECAUSE I
           3   LOOKED AT YOUR PAPERS AND TRIED TO FIND, OTHER THAN FINDING
           4   THAT THE OTHER JURY FOUND THAT THERE MUST HAVE BEEN ONE, A
02:38:34   5   CITATION, I THINK, TO A CLOSING ARGUMENT WHERE YOU TALK
           6   ABOUT ONE; A CITATION TO THE RFA'S, WHICH JUST AGAIN SAYS
           7   THAT THEY WERE ACTING PURSUANT TO POLICY AND WHICH I THINK
           8   MAY JUST BE A COURSE AND SCOPE OF EMPLOYMENT RESPONSE.
           9           I DIDN'T SEE ANY FACTS IN ANY GENUINE STATEMENTS
02:39:01  10   OF FACTS OR ANYTHING ALONG THOSE LINES THAT TELLS ME WHAT
          11   THAT POLICY IS, SO I WOULD LIKE YOU TO POINT ME IN YOUR
          12   PAPERS TO WHERE YOU DESCRIBE OR STATE AND HAVE EVIDENCE OF
          13   WHAT THE POLICY IS THAT --
          14           MR. INGOLS:  SURE, YOUR HONOR.
02:39:27  15           AS YOU KNOW, THE FILE IS QUITE THICK.
          16           THE COURT:  I DO AND WE SEARCHED.  PERHAPS YOU
          17   HAVE IT MORE AT YOUR FINGERTIPS THAN WE DO.
          18       (PAUSE.)
          19           MR. INGOLS:  WELL, YOUR HONOR, ALL IT IS -- IT IS
02:40:06  20   ACCURATE TO SAY THAT ALL THAT IS IN OUR PLEADINGS IS
          21   POINTING TO THE COURT OF APPEALS' FINDING THAT THE JURY DID
          22   FIND THAT THERE WAS A MONELL VIOLATION WHICH WAS BASED IN
          23   LARGE PART ON THE REQUEST FOR ADMISSIONS RESPONSES WHICH
          24   ADMITTED THAT THEY WERE ACTING IN ACCORDANCE TO POLICY WHEN
02:40:22  25   THEY WERE -- HAVE FOUND TO HAVE MISLED THE JUVENILE COURT.
```

```
02:40:26   1            THE COURT:  OKAY.  ALL RIGHT.  SO LET ME LET YOU
           2  MOVE ON AND ADDRESS ANY ISSUE THAT YOU'D LIKE TO ADDRESS.
           3            MR. INGOLS:  WELL, YOUR HONOR, I DO THINK THE
           4  PLEADINGS FROM BOTH SIDES WERE QUITE THOROUGH, SO I HAVE
02:40:39   5  VERY LITTLE TO ADD.
           6            IT TROUBLES ME ANY SUGGESTION THAT THERE'S AN
           7  ARGUMENT THAT IT WAS SOMEHOW UNCLEAR THAT LYING TO A JUDGE
           8  IS BAD.  IT'S BEEN CLEAR FOR A LONG, LONG TIME.  ANY
           9  ARGUMENT TO THE CONTRARY SHOULD NOT BE CREDITED.
02:40:51  10            BEYOND THAT, I DON'T HAVE ANYTHING TO ADD.  IF YOU
          11  HAVE ANY QUESTIONS, I'D BE HAPPY TO TRY TO ANSWER THEM.
          12            THE COURT:  I DON'T THINK I HAVE ANY FURTHER
          13  QUESTIONS.  I KNOW YOU CAME ALL THE WAY FROM SAN JOSE.  IT'S
          14  TOO BAD THAT I DON'T HAVE MORE QUESTIONS FOR YOU AT THIS
02:41:05  15  POINT.
          16            YOU DID COME FROM SAN JOSE, RIGHT?
          17            MR. INGOLS:  I DID, YOUR HONOR.
          18            THE COURT:  ALL RIGHT.  I DON'T HAVE ANY MORE
          19  QUESTIONS.  I ASKED THE MONELL QUESTION THAT I HAD.  SO
02:41:14  20  THERE'S REALLY NOTHING TO RESPOND TO AT THIS POINT.
          21            SO THE COURT WILL TAKE THE MATTER UNDER SUBMISSION
          22  AND THE RULING WILL BE POSTED ON THE DOCKET.
          23            WHAT'S OUR TRIAL DATE HERE FOR THIS ONE?  DO YOU
          24  KNOW?
02:41:29  25            MR. WATKINS:  MAY 19TH, I THINK, YOUR HONOR.
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
02:41:31   1              THE COURT:  MAY 19TH.
           2              OKAY.  AND YOUR FINAL PRETRIAL CONFERENCE IS
           3  MAY 1ST.  AND I KNOW THAT THIS -- THE FACTUAL CIRCUMSTANCES
           4  HERE, YOU'VE BEEN THROUGH THIS BEFORE, BUT HAVE YOU GONE
02:41:48   5  THROUGH A SETTLEMENT CONFERENCE ON THIS CASE?
           6              MR. WATKINS:  WE HAVE, YOUR HONOR.
           7              THE COURT:  YOU HAVE.  WHEN WAS THAT?  HOW LONG
           8  AGO?
           9              MR. INGOLS:  FAIRLY RECENTLY.  I DON'T RECALL THE
02:41:57  10  EXACT DATE.
          11              THE COURT:  OH, IT WAS.
          12              MR. INGOLS:  A MONTH AGO, YOUR HONOR.
          13              THE COURT:  ALL RIGHT.  DON'T TELL ME WHAT WAS
          14  DISCUSSED IN ANY WAY.  BUT ARE THERE ANY FURTHER SETTLEMENT
02:42:07  15  DISCUSSIONS THAT ARE ANTICIPATED?
          16              MR. WATKINS:  NO, YOUR HONOR.
          17              THE COURT:  ALL RIGHT.
          18              MR. INGOLS:  CERTAINLY NOT PRIOR TO YOUR HONOR'S
          19  DECISION.
02:42:14  20              THE COURT:  THAT'S FINE.  I'LL BE PREPARED TO
          21  RULE, PROBABLY, BEFORE YOU WOULD HAVE THE TIME TO ENGAGE IN
          22  ANY FURTHER SETTLEMENT CONFERENCES ANYWAY.
          23              MR. WATKINS:  ALL I'LL SAY WITHOUT GETTING INTO
          24  THE IMPERMISSIBLE REALM IS THAT THE SIDES ARE WORLDS APART
02:42:28  25  AND YOUR RULING WOULD, PROBABLY, HELP QUITE A BIT, ONE WAY
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
02:42:31   1    OR THE OTHER.
           2              THE COURT:  ALL RIGHT.  WELL, WE'LL SEE IF THAT'S
           3    THE CASE.  I MAY -- AFTER RULING, I MAY ORDER YOU FOLLOW UP
           4    WITH A MEDIATOR; OR, IF NECESSARY, A MAGISTRATE JUDGE.  I
02:42:43   5    THINK A MEDIATOR, PROBABLY, WOULD WORK, IF YOU ALREADY HAVE
           6    SOMEBODY THAT YOU'VE USED BEFORE.
           7              MY CLERK IS LOOKING AT ME LIKE THERE MIGHT BE
           8    SOMETHING I NEED TO ADDRESS BEFORE I LET YOU GO.
           9         (PAUSE.)
02:42:53  10              THE COURT:  OH, I'M SENDING OUT -- I'M GOING TO BE
          11    SENDING OUT AN ORDER, PROBABLY -- IT MAY NOT GO OUT TODAY,
          12    BUT IT WILL, PROBABLY, GO OUT BY MONDAY.  YOU ESTIMATED A
          13    20-DAY TRIAL.  THAT'S REALLY NOT LIKELY TO BE THE CASE IN
          14    THIS COURT.  BUT IF YOU THINK YOU'RE GOING TO HAVE A 20-DAY
02:43:13  15    TRIAL, YOU'LL SEE WHAT I REQUIRE IN THE ORDER.  I REQUIRE
          16    YOU TO GIVE ME VERY SPECIFIC INFORMATION ABOUT WHO YOUR
          17    WITNESSES ARE, WHAT THEY WILL TESTIFY TO, HOW LONG.  AND I
          18    ALSO REQUEST THAT YOU LET ME KNOW WHETHER THE PARTIES WILL
          19    STIPULATE TO A TIME-QUALIFIED JURY; IF YOU DON'T, THEN WE
02:43:34  20    HAVE A LITTLE BIT OF DIFFICULTY -- WE FOUND -- GETTING
          21    JURIES THAT ARE AVAILABLE FOR THAT PERIOD OF TIME.
          22              SO THAT ORDER WILL BE COMING.  IT WILL BE ISSUED
          23    ON MONDAY, AND YOU WILL NOT HAVE A WHOLE LOT OF TIME TO
          24    RESPOND TO IT, SIMPLY BECAUSE WE NEED TO KNOW ABOUT THE
02:43:49  25    TIME-QUALIFIED JURY IN ADVANCE, BECAUSE WE HAVE TO SEND OUT
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

| | | |
|---|---|---|
| 02:43:53 | 1 | QUESTIONNAIRES.  AND WITH YOUR TRIAL THIS CLOSE, WE'RE GOING |
| | 2 | TO HAVE TO SEND THAT OUT PRETTY SOON. |
| | 3 |       MR. INGOLS:  WELL, YOUR HONOR, WITH THE |
| | 4 | UNDERSTANDING THAT THE -- I'M SURE COUNSEL'S ESTIMATE, AS |
| 02:44:02 | 5 | WELL AS OURS, WOULD VARY, DEPENDING ON YOUR RULING. |
| | 6 |       THE COURT:  YES, OF COURSE, I DO UNDERSTAND THAT. |
| | 7 | BUT BARRING THAT AND JUST BASED ON WHAT I HAVE, I'M GOING TO |
| | 8 | BE ISSUING THE RULING -- I MEAN, ISSUING THE ORDER ABOUT THE |
| | 9 | WITNESSES.  NOW, IF WHAT YOU WOULD LIKE TO DO IS -- I WILL |
| 02:44:21 | 10 | GIVE YOU THE OPTION.  IF YOU DON'T HAVE MY RULING ON SUMMARY |
| | 11 | JUDGMENT BY THE TIME YOU'RE REQUIRED TO RESPOND TO THAT -- |
| | 12 | WHICH I THINK I'M GIVING YOU 10 DAYS -- THEN, AT LEAST |
| | 13 | RESPOND TO THE PORTION RELATING TO WHETHER YOU STIPULATE TO |
| | 14 | A TIME-QUALIFIED JURY, BECAUSE THAT'S SOMETHING THAT WE HAVE |
| 02:44:38 | 15 | TO GET OUT; AND THEN, WE CAN ALWAYS CHANGE THAT.  WE CAN |
| | 16 | ALWAYS SAY, *OKAY, WE DON'T NEED A TIME-QUALIFIED JURY NOW*, |
| | 17 | BUT AT LEAST IT GIVES US THE ABILITY TO GO FORWARD WITH |
| | 18 | THAT, IF NECESSARY. |
| | 19 |       ALL RIGHT.  HAVE A NICE WEEKEND. |
| 02:44:53 | 20 |       MR. INGOLS:  THANK YOU, YOUR HONOR. |
| | 21 |       THE CLERK:  ALL RISE. |
| | 22 |       MR. WATKINS:  YOUR HONOR, WE HAD PLAINTIFF'S |
| | 23 | MOTION ALSO PENDING. |
| | 24 |       THE COURT:  I THOUGHT BOTH WERE GOING TO BE UNDER |
| 02:45:05 | 25 | SUBMISSION. |

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
02:45:05   1              I ASSUMED YOU WANTED --
           2              MR. INGOLS:  THAT'S WHAT I UNDERSTOOD AND
           3    INTENDED, YOUR HONOR.
           4              THE COURT:  I ASSUME SO, BECAUSE I ANNOUNCED BOTH
02:45:11   5    AT THE BEGINNING OF THE HEARING.
           6              ALL RIGHT.
           7              MR. INGOLS:  THANK YOU.
           8              MR. WATKINS:  THANK YOU, YOUR HONOR.
           9         (AT 2:45 P.M., PROCEEDINGS WERE ADJOURNED.)
02:45:15  10
          11                             -OOO-
          12
          13                          CERTIFICATE
          14         I HEREBY CERTIFY THAT PURSUANT TO SECTION 753,
02:45:15  15    TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND
          16    CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED
          17    PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE
          18    TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE
          19    REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.
02:45:15  20
          21    DATE:  JUNE 8, 2015
          22
          23
          24                         _____/S/DEBORAH D. PARKER_____
                                     DEBORAH D. PARKER, OFFICIAL REPORTER
02:45:15  25
```