ROBERT R. POWELL, ESQ.    CSB# 159747
POWELL & ASSOCIATES
925 West Hedding Street
San Jose, California 95126
T: (408) 553-0200 F: (408) 553-0203
E: rpowell@rrpassociates.com

DENNIS R. INGOLS, ESQ.    CSB# 236458
LAW OFFICE OF DENNIS R. INGOLS
111 North Market Street, Suite 300
San Jose, California 95113
T: (408) 601-0126
E: dennis@ingolslaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(Southern Division – Santa Ana)

| | |
|---|---|
| PRESLIE HARDWICK,<br><br>                        Plaintiff,<br><br>        vs.<br><br>COUNTY OF ORANGE, et al.,<br><br>                        Defendants. | Case No. SACV 13-1390 JLS (ANx)<br><br>PLAINTIFF'S MOTION FOR NEW TRIAL AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT<br><br>Hearing Date: August 18, 2017<br>Hearing Time: 2:30 p.m.<br>Courtroom: 10A<br>Judge: Hon. Josephine L. Staton |

i

# **TABLE OF CONTENTS**

I.    INTRODUCTION……………………………………………………… 1

II.   JURY VERDICT WAS AGAINST
      CLEAR WEIGHT OF EVIDENCE…………………………….….... 4

      A.   Clear Weight of the Evidence Showed That Deanna Did
           Not Make The Comment That Spurred Removal;
           Vreeken Did…………………………………………………… 6

      B.   The Comments Falsely Attributed To Deanna
           By Defendants, Were The But-For Cause
           Of The Children's Removal……………………………………15

III. DEFENSE COUNSEL MISCONDUCT
     WARRANTS A NEW TRIAL……………………………….…..… 18

III. CONCLUSION…………………………………………………… 23

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>:

*Ballarini v. Clark Equipment Co.*, 841 F.Supp.662  (E.D.Penn. 1993)….18,19

*Caudle v. District of Columbia*, 707 F.3d 354 (D.C.Cir.2013)……….….. 19

*Copper v. City of Fargo*, 184 F.3d 994 (8th Cir. 1999)………...…………… 3

*Experience Hendrix LLC v. Hendrixlicensing.com Ltd.*,
 742 F.3d 377 (9th Cir. 2014) …………………………………………... 3

*Fogarty v. County of Orange,* Trial Case #01CC02379,
Appellate Case (4th Dist Court of Appeal, Cal) #G039045……………..…….11

*Gill v. Rollins Protective Services Co.*, 773 F.2d 592 (4th Cir. 1985)……….. 5

*Landes Const. Co. v. Royal Bank of Canada*,
833 F.2d 1365 (9th Cir. 1987)…………………………………………... 5

*Molski v. M.J. Cable, Inc.*, 481 F.3d 724 (9th Cir. 2007)………………… 4, 18

*Murphy v. City of Long Beach*, 914 F.2d 183 (9th Cir. 1990)………………5

*Pediatrix Screening Inc. v. TeleChem Int'l, Inc.*,
602 F.3d 541 (3rd Cir. 2010) …………………………………………… 3

*Settlegoode v. Portland Public Schools*, 371 F.3d 503 (9th Cir. 2004)………18

*Tortu v. Las Vegas Metro[] Police Dept.*,
556 F.3d 1075 (9th Cir. 2009)……………………………….…….. 3

*Zhang v. Am Gem Seafoods, Inc.*, 339 F.3d 1020 (9th Cir. 2003)……….……18

<u>Statutes</u>:
42 U.S.C. 1983……………………………………………………….22

<u>Secondary Source</u>:
The Rutter Group, Federal Civil Trials and Evidence………………………….7

Plaintiff respectfully submits the following motion for new trial:

# I.   <u>INTRODUCTION</u>

This case involved claims by Plaintiff that on February 17th, 2000, social workers Marcie Vreeken and Elain Wilkins lied to the juvenile dependency court in the County of Orange about events and statements allegedly made after a visitation on February 15th, 2000 between then-minor (6 yrs old) Plaintiff, her sister (9 yrs old), and their father Cary Hardwick.  Plaintiff contended the false representations were the but-for cause of an immediate and traumatic removal on February 17th from her mother. [Dkt. 1]

Plaintiff additionally alleged that Defendant Vreeken withheld a March 31, 2000 letter and/or its contents about the severe emotional distress the children were suffering, from the juvenile dependency Court on that same date – despite the fact the letter was in the Courtroom and in Vreeken's possession or control. The letter had been sent by a therapist for the children (Marjorie Mitchell PhD.) and addressed their severe psycho-emotional regression due to the separation from their mother.  Plaintiff claimed this withholding of evidence was a but-for cause of failing to return Plaintiff. [Dkt. 1]

For both claims, Plaintiff sued Helen Dwojak (deceased, thus proper Defendant name "Estate of Helen Dwojak") in her supervisory role over both

PLAINTIFF'S MOTION FOR NEW TRIAL
Hardwick v. County of Orange
U.S. District Court – Central District
Case No. SACV 13-1390 JLS(ANx)

Vreeken and Wilkins. [Dkt. 1]

The trial was notable for the persistent and non-stop objectionable conduct of Defendants' counsel, often in bold and consecutively repeated defiance of the Court's rulings and admonitions.  Examples include repeated efforts to introduce evidence of mental health experts involved with the family prior to juvenile court involvement, and repeated to the level of "theme" efforts to demonize the Plaintiff's mother ("Deanna"), including doing so in closing argument after being expressly told he would not be allowed to argue that the conduct of mother was the "cause" of the removal of the children.[1] [Declaration of

_____

[1] Related to the confusing and prejudicial statements allowed to be made by Defendants' counsel – regardless of the standard instruction made to the jury that statements of counsel are not evidence, is the denial of Plaintiff's MIL#1 (Dkt. 93).  Therein, Plaintiff pointed out the obvious breadth of the claims – and previously denied by the 9th Circuit immunity defenses – Defendants' counsel was intending to make during trial as reasonably inferred from the 174 Exhibits the Defendants proposed (Dkt. 113 – only the last four Exhibits listed are Plaintiff's). Plaintiff offered in MIL #1 the suggestion that Defendants be ordered to provide some offer of proof per Exhibit, why family court proceedings running not less than 6 years *after* the removal of the children would/could have some bearing on the issues in this case, and why all transcripts from juvenile proceedings in which 3-4 hearings at most were relevant would have relevance.  With that motion denied, the Defendants' counsel's opening statement was literally a recap of that six years of litigation, including the statements from §730 evaluators that were later not only denied into evidence by the Court, but proved to have never been in the possession of the Defendants prior to the removal of the children.  Shortly after the opening statements and while not yet complete with the testimony of the first witness (Deanna Fogarty) the Court expressed concerns about these very same issues; scope of the trial, scope of the evidence, and the relevance of the mountain of evidence. [Dec.]

2

PLAINTIFF'S MOTION FOR NEW TRIAL
Hardwick v. County of Orange
U.S. District Court – Central District
Case No. SACV 13-1390 JLS(ANx)

Plaintiff's Counsel [In Support].[2]

Defendants' counsel hammered the "length of the litigation," claiming it spanned 17 years, and stated in his opening statement as well as his closing argument that it "has to end."  [Dec.]  It was an emotive appeal to everything *other than the facts of the case that underlie the Plaintiff's claim*, and nothing in the sentiment constitutes a valid legal defense.

The evidence was substantially in favor of Plaintiff prevailing on her claims.  The credibility of the seminal witnesses for Defendants – which were the Defendants themselves -  was non-existent. Uniquely, in this case, the inconsistency and lack of credibility was shown repeatedly in huge part through

---

[2] Given that the only Declaration that will accompany this motion is the Declaration of Plaintiff's Counsel In Support Of Plaintiff's Motion For New Trial, it will hereafter merely be cited as "Dec."  This will not be added to the end of every sentence, but at the end of a paragraph in most instances, and the particulars of the paragraph dealt with in the Declaration.  Plaintiff finds no authority requiring the use of trial transcripts in a motion for new trial.  Indeed the gravamen of such a motion and the Court's discretion in regard to such motions, is support enough for submission of the events of trial by declaration, as in the end such motions are ruled upon based on the Court being the "only objective person (with legal training) who was at the trial and able to see, hear, and evaluate the situation using firsthand knowledge[.]" (*Tortu v. Las Vegas Metro[] Police Dept.*, 556 F3d 1075, 1088 (9th Cir. 2009).  A Court may order a new trial sua sponte, undercutting any claim a trial transcript is ever needed for a learned jurist who presided over the trial to rule on such motions. [*Copper v. City of Fargo*, 184 F3d 994, 997 (8th Cir. 1999), see also *Experience v. Hendrix LLC v. Hendrixlicensing.com Ltd.* 742 F3d 377, 390 (9th Cir. 2014) – district court not restricted to grounds party asserts regarding damages verdict but may sua sponte raise its specific concerns; *Pediatrix Screening Inc. v. TeleChem Int'l, Inc.*, 602 F3d 541, 546 (3rd Cir. 2010)]

PLAINTIFF'S MOTION FOR NEW TRIAL
Hardwick v. County of Orange
U.S. District Court – Central District
Case No. SACV 13-1390 JLS(ANx)

the Defendants' own prior sworn testimony used to impeach.  [Dec.]

In addition to those glaring problems, the jury clearly did not review the evidence; they deliberated only approximately two hours. [Dec.]  And, the conduct of Defendants' counsel along with the over-ruling of proper objections to Defendants' counsel's arguments and questioning-made-to-look-like-evidence allowed the jury to be improperly prejudiced and biased against Plaintiff and/or utterly confused as to the gravamen of the civil rights violation claims Plaintiff was making. [Dec.]

Prior to the start of trial, due in large part to the Court's allowing the six to seven year long post-juvenile court history to come into evidence by way of denial of the Plaintiff's Motion in Limine #1 (Dkt. 93), Plaintiff dismissed all claims for damages for any conduct of the Defendants occurring after March 31, 2000; limiting damages to the damages suffered as a result of the removal from her mother on February 17, 2000, and the damages related to the act of judicial deception – by withholding of evidence – on March 31, 2000. [Dec.]

## II.   JURY VERDICT WAS AGAINST CLEAR WEIGHT OF EVIDENCE

Under FRCP Rule 59, a new trial may be ordered where the verdict is against the clear weight of the evidence." [*Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir.2007)]   In fact, a trial judge has a duty to set aside a verdict if

4

she is "of the opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false or will result in a miscarriage of justice." [*Gill v. Rollins Protective Services Co.*, 773 F.2d 592, 594 (4th Cir.1985)]  In ruling on a new trial motion based on insufficiency of evidence, the district court must weigh the evidence and assess for itself the credibility of witnesses. "It is clear that the district court judge had the right, and indeed the duty, to weigh the evidence as [she] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where in [her] conscientious opinion, the verdict is contrary to the clear weight of the evidence, or . . . to prevent . . . a miscarriage of justice." [*Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir.1990)]  In doing so, there is no presumption that the verdict is correct, and the judge does not need to view the evidence in the light most favorable to the party in whose favor the verdict was rendered. [*Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir.1987)]

Here, Plaintiff submits the verdict is against the clear weight of the evidence on the following issues: 1) whether Deanna Fogarty made a comment on February 15, 2000 to the effect of, "your Dad is trying to take you away and put you in foster care," and the related converse, whether in fact it was Marcie Vreeken who said something to the children about being taken away from

PLAINTIFF'S MOTION FOR NEW TRIAL
Hardwick v. County of Orange
U.S. District Court – Central District
Case No. SACV 13-1390 JLS(ANx)

Deanna and going to "foster care" and then lied about both (in addition to lying in a Second Amended Petition filed for February 23, 2000 (Ex. F[3] about both); 2) whether these actions/inactions, and the withholding of the March 31, 2000 letter from the children's therapist Marjorie Mitchel PhD. were civil rights violations based on "judicial deception;" and 3) whether the juvenile court's removal "forthwith" on February 17, 2000 was attributable in a legally sufficient "but for" manner to the judicial deception by Defendants Vreeken and Wilkins, and the continued detention of the Plaintiff (this claim not as to Wilkins) in foster care  on March 31, 2000 occasioned by failing to disclose to the Court the letter from Dr. Mitchell, or convey its contents about the psychologically traumatized children to the juvenile court judge.

Plaintiff requests that a new trial be held on all issues. [Rule 59(a)]

## A.    Clear Weight of the Evidence Showed That Deanna Did Not Make The Comment That Spurred Removal; Vreeken Did

Plaintiff reiterates the holding in *Murphy*, that the district court has, "the right, and indeed the duty, to weigh the evidence as [she] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where in [her] conscientious opinion, the verdict is contrary to the clear weight of the evidence, or . . . to prevent . . . a miscarriage of justice."   This standard holds

---

[3] Vreeken included B-5 & C-6, claiming under oath Wilkins heard the statement.

PLAINTIFF'S MOTION FOR NEW TRIAL
Hardwick v. County of Orange
U.S. District Court – Central District
Case No. SACV 13-1390 JLS(ANx)

the court to, "assess for itself the credibility of witnesses." [Rutter Grup, Fed
Civil Tr & Evid, 20:103]  There is no presumption a verdict is correct. [*Landes
Const. Co. v. Royal Bank of Can.*, 833 F.2d 1365, 1371 (9th Cir.1987)]

This case was marked by repeated statements under oath in trial by Marcie
Vreeken that were contradicted on the record by reading from her own prior
testimony under oath.  The impeachments of Vreeken came from the March
2000 juvenile court trial, an event that occurred within 6 weeks of the actual
events at issue. Plaintiff puts the number of statements under oath contradicted
by Vreeken's own prior testimony conservatively at twenty in number. The
impeachment literally would follow question after question at times during
Vreeken's direct examination.  [Dec.]   The Court admitted Exhibits 19, 20, and
21, transcripts of the juvenile proceedings for March 29, 30, and 31, 2000, and
these were used extensively to impeach Vreeken.  [Dec.; Note: herein those
Exhibits are attached as A, B, and C respectively.  Bates numbers in the lower
right of all pages match the Exhibit List as maintained by the Court in trial.[4]]

An extremely weighty piece of evidence that would have to have been
completely ignored by the jury, came straight from Kendall's mouth to her
therapist Marjorie Mitchell PhD., reported by the doctor on a February 16th

---

[4] In citing page numbers from a transcript Exhibit, PDF numbers in the lower
right hand corner will be used for the "pages" not page number on document.

7

PLAINTIFF'S MOTION FOR NEW TRIAL
Hardwick v. County of Orange
U.S. District Court – Central District
Case No. SACV 13-1390 JLS(ANx)

session, smack between the visit and the day of the removal,

> "Kendall was very distraught today and ruminated over being put into another home, like a foster home. Reportedly after she cried and protested about seeing her father the new social worker, *"Marcie" threatened to send them to a foster home*."  [Ex. D]

Vreeken in her trial testimony herein, and her juvenile court trial testimony back in March of 2000, acknowledged that she supplied the children with all they needed for Preslie to come into the room her mother occupied, crying all the while Vreeken had talked about their dad and going to foster care;

> 1) "Q.  Did you say anything to Kendall during those five minutes or so before you and Kendall went over to where her mother was that evening? A: She asked me, "Where do kids go?" And I explained to her that she's with her mom and some kids go to foster home and some kids go to group homes, but she's with her mom." [Ex. C, 41:4-10, see also Ex. B, 4:11-16]

> 2)  "Q. Did you say anything to [Kendall] that a judge could place a child in foster care? A. Yes" [Ex. B, 5:21-23]

> 3) "Q.  Did the mother make a statement to you when you walked in, basically, inquire of you why you had told her children that you were going to take them away from her that evening, something to that effect? A.  She made statements yes." [Ex. A, 66:17-26]

Each of these facts was shared with the jury during Vreeken's testimony, and in closing argument.  Also, no one refuted Deanna's statements upon Vreeken entering the room she was in on February 15th.  Why would Deanna say that but-for Preslie ran in and related what Vreeken had said?  The evidence is

8

PLAINTIFF'S MOTION FOR NEW TRIAL
Hardwick v. County of Orange
U.S. District Court – Central District
Case No. SACV 13-1390 JLS(ANx)

simply overwhelming; the rational conclusion compelling.  This jury spent only about two hours in deliberations, and clearly ignored all of this evidence despite the fact it was all provided to them in testimony, and in hard copy evidence in their possession.[5]  That is the definition of a "miscarriage of justice."

The jury was also told through Vreeken's live testimony, and it was in Exhibit C (33:16-20), both children in a subsequent Vreeken interview said they did not hear their mother say anything about their father threatening to take them and put them in a foster home. [Dec.]

Another weighty piece of evidence that supports the utter fabrication of Vreeken and Wilkins' claim that Deanna made the alleged comment, is the fact that nowhere in Vreeken's report submitted the 17th of February 2000, does she say a single word about this alleged statement by Deanna; *not a word* about this alleged incident or statement February 15th is mentioned.  [Ex. B, 10:19-24]

Another telling sign of an utter lack of credibility was when Elaine Wilkins was on the stand, and asked if after reviewing any of the documents she reviewed for trial, or evidence heard thus far in trial, anything had returned to her memory, or her memory had been refreshed about anything regarding the events on February 15, 2000.  Notable here was that Wilkins had just heard the

---

[5] The three transcripts, A, B, and C, total 215 pages.  The jury would have to have read them at a rate of more than 3 pages a minute; unlikely at best.

PLAINTIFF'S MOTION FOR NEW TRIAL
Hardwick v. County of Orange
U.S. District Court – Central District
Case No. SACV 13-1390 JLS(ANx)

Court say that Rosie Reales was not going to be allowed to testify. [Dec.] Not surprisingly, she then claimed two things she recalled some 17 years after the events of February 2000: 1) Rosie Reales *definitely* was not in the room when she claimed to have heard Deanna say words to the effect of, "Your dad is trying to take you [kids] away and put you in foster care," and 2) she remembered how violent and out of control Deanna was when she came out of the bathroom, saying she felt severely threatened. [Dec.]  The Court hopefully recalls – for one cannot "see" it in a transcript – the smug look on Ms. Wilkins face when she announced her clear recollection Ms. Reales was not in the room. Thinking Rosie Reales wouldn't be there to contradict her amazing recollection emboldened Elaine Wilkins to lie on the stand.  Practice makes perfect!

Briefly, Plaintiff will address the 2nd of Wilkins "recovered memories." Vreeken testified – again, using her juvenile trial testimony from March to impeach her along the way because, like Wilkins, she made Deanna out to be histrionically out of control and putting Vreeken in "fear" – that, Deanna's hands weren't in a position to strike or hit her, and that she was just flailing her hands in a manner that fit her emotional state. [Dec.; Ex. C 27:14-28:9]  This was a stark contrast to the manner that Vreeken and Wilkins were now, in trial, trying to portray Deanna – clearly the target of the defense - there being really

10

no other target than making out Deanna as a lying, scheming ex-wife for the purpose of confusing the jury on the issues in the case.

Wilkins had testified in this trial – by way of her deposition transcript from the *Fogarty v. County of Orange* trial[6] being read into the record (Dec.)– to all of the following important points about February 15, 2000,

- She heard "the daughter [Preslie] telling mother as to what was going on with her dad and with the social worker[,]" she could not state verbatim what was said; she didn't recall anything the child said.

- Described the children, during the visit with father just before the claimed comments about "foster care" by Deanna, as "very happy to be there."

- Marcie Vreeken talked with kids after visit, and agreed that was "when Kendall started tearing up."  She testified Kendall looked frightened and upset, and knew of nothing else other than something Vreeken said, that could have made her frightened and upset. She did not however, remember a single thing Vreeken said to the girls; not one.

- Testified she left the play room, where Vreeken was talking to the children (specifically Kendall), before Vreeken left the room, however Vreeken testified Wilkins remained in the playroom after she and Kendall left that room

---

[6] For reference, though not an admitted Exhibit, testimony taken direct from pp 819-832, trial transcript *Fogarty-Hardwick v. County of Orange*. [Dec.]

PLAINTIFF'S MOTION FOR NEW TRIAL
Hardwick v. County of Orange
U.S. District Court – Central District
Case No. SACV 13-1390 JLS(ANx)

and headed to the room Deanna and Ms. Reales were in.  Vreeken in fact, said that Wilkins – who claims to have heard Deanna make this comment – was a "minute or two" behind her. [Ex. A, 60:14-25][7]

- She agreed she did not know what, if anything Preslie may have said to her mom before entering the room the mother was in, that she had followed Preslie to, where she didn't recall Rosie Reales present, but it was "possible." Vreeken on the other hand, didn't hesitate in acknowledging Rosie Reales was in the room with Deanna! [Ex. A, 59:15-18; 64:11-18; 72:22-73:2] Vreeken testified Rosie was in the room the entire time! [*Id*. 71:9-72:24]

- Wilkins knew of *no evidence other than her claims* given to the juvenile court on February 17, 2000, that Deanna told the children that their father was trying to take the children away.

Further as to the violation of Plaintiff's rights related to the withholding of the Marjorie Mitchell PhD. letter of March 31, 2000 (Ex. D) at the hearing, Plaintiff points out again Vreeken's lack of credibility, and the facts which so clearly made that act of omission an act of judicial deception.[8]

---

[7] That makes the claim Wilkins heard something Vreeken claims she did not, beyond untenable and into fantastical – or simply lying on the part of both Defendants about the alleged comment by Deanna.

[8] There was a stark example of Ms. Vreeken's vascillating tendencies from the juvenile court hearing on March 30th, 2000, which reads, "Q: You testified yesterday that you saw the children coming out of the rest room with mother.

PLAINTIFF'S MOTION FOR NEW TRIAL
Hardwick v. County of Orange
U.S. District Court – Central District
Case No. SACV 13-1390 JLS(ANx)

First, Vreeken testified in this trial that the Judge was given the letter; literally it was handed to him and he read it. Vreeken testified she remembers clearly how the Judge in that hearing (March 31, 2000, Ex. C) asked her to follow up with Dr. Mitchell on the content of the letter, after it was discussed in Court.  [Dec.]  No surprise, the transcript reveals both of these statements are utter fabrications.  Following, is the discussion by the Court with Vreeken on March 31, 2000, prompted by an inquiry from Deanna's counsel Mr. Hermes,

"**The Court**: Mr. Hermes, I believe you still have a few questions, if you'd like to proceed. **Mr. Hermes**: Yes, a few. I'd like to address the court on another matter before it gets too late, and I know Mr. Stapleton has to leave at 4 o'clock. It's my understanding -- yesterday we talked about an oral motion to remove the kids back to mother, and we heard the court's comments about the need for some kind of evidentiary basis. It's my understanding that Dr. Mitchell has talked to Ms. Vreeken, and I thought that she had submitted a report. It was also my understanding from a message left on our answering machine to get a hold of Ms. Vreeken, that the kids were not doing well, and she wanted to talk to Ms. Vreeken about something, and I would like to know if we could maybe take it up in the next five minutes. [If] [t]here is a problem, we'd like to know about it, so maybe we can make another motion to this court, if the kids are in some type of extreme emotional state that would require the court to intervene. We haven't received a copy of any letter or know from Ms. Vreeken what was said in her discussion with Dr. Mitchell.  I think it would be very important to take care of that if there is a problem before we leave for the day. **The Court**: *Do we have some information from again, I guess we're also talking about talking to people, the foster home and Dr. Mitchell and things like that. Is that*

Was that incorrect?  A: Yes.  Q: So you didn't see mother coming out of the restroom with the two children that evening?  A:  No." [Ex. B, 14:15-20]

13

*what you're talking about?* **Mr. Hermes**: *Yes. I don't know if Dr.
Mitchell's talked to people in the foster home or what she's done, but I
know she's interviewed the children, and I would just like to know if
there's something we should deal with today based on the opinion of
Ms. Vreeken before it gets too late.* **The Court**: *I hate to say that I
assume that if that is a problem that they would bring that up, and that
the agency would have done so. Ma'am, if you had that kind of a
situation you would bring it to the court's attention?* **The Witness**: *Yes.*
**The Court**: *And in not bringing it to the attention of the court at this
time, does that mean that at this time you don't feel that you have a
situation where we need to act on something right this minute?* **The
Witness**: *Yes.*" [ex. C, 65:17-67:17 – emphasis added]

Does that sound like a judge who had just read a letter that described

Preslie as "angrily acting out," and her sister Kendall "tearful" throughout visits,

and "cling[ing]" to her prior to leaving, showing signs of "extreme emotional

lability," or signs of "emotional regression?" [Ex. D]  Why would someone who

read that letter need to ask such questions?  They wouldn't; another Vreeken lie.

Vreeken's adamant claim in trial about the judge asking her to follow-up

with Dr. Mitchell can't be shown to the Court in the transcript, *but only because*

*it does not exist.*  [Dec.; Ex. C, 67:7-77:7 – content after exchange with Court]

The jury's verdict was clearly against, the clear weight of the evidence,

indeed it defied the evidence, and may well have been due in part to the

confusing, distracting, prejudicial and misleading claims of Defendants'

counsel, which will be addressed later herein.

14

**B.**     **The Comments Falsely Attributed To Deanna By Defendants,**
**Were The But-For Cause Of The Children's Removal**

It is also inescapable when considering the clear weight of the evidence,

that the lie about the alleged statement by Deanna was what triggered the

removal order.  Since the jury did not get past the violation of rights for either

the conduct or submissions of a false Amended Petition on the 17th of February,

or the violation related to withholding the information in the March 31, 2000

letter from Dr. Mitchell at the hearing of that date, Plaintiff will not cover

extensively the fact that the clear weight of the evidence also showed that the

fraud on the Court by Vreeken and Wilkins was the but-for cause of the removal

order, but some coverage is deserved.

When providing the "facts" upon which Vreeken was requesting a new

amended Petition be filed, she wrote on her Application for Petition that the very

reason ("due to") for the removal order of the Court on February 17, 2000, was

mother's negative statements/threats to the children that their father was trying

to take them away and put them in foster care. [Dec., Ex. G (104-373)]  How did

she come to this conclusion?  The same way anyone of reasonable intelligence

in that courtroom would have understood the events of that day! It is abundantly

clear from the statements of the court during that very hearing (February 17,

2000), and subsequent comments of the court during the subsequent jurisdiction

15

trial on March 31, 2000 that were also in evidence, that the alleged statements by Deanna drove the removal order.  Plaintiff does not dispute this result was supported by Vreeken's failure to say anything at all about the problems she herself was concerned about with regard to Mr. Degadillo continuing as a monitor in the case.   First, Plaintiff addresses the comments of the court at the "removal" hearing which lay bare this truth.

Exhibit E is the transcript of the February 17, 2000 hearing.  The first thing to note is the court came out of the off-the-record conversation by saying it had a "discussion with Marcie Vreeken regarding some observations that the worker made in the case." [*Id*. 2:26-3:3]  The very next sentence out of the judge's mouth was, "And I have indicated to counsel *the Court's inclination is to order social services to move the children from the mother's care pending the next hearing*." [*Id*. 3:3-6 – emphasis added][9]   After brief argument by mother's counsel, the judge directly asks only two questions of anyone (that matter),

> "The Court: Ms. Vreeken, your comment was that the mother had told the children in someone's presence that the father was trying to take the children away from her? Ms. Vreeken: Yes.  The Court: And who was the person that was present when that statement was made?  Ms. Vreeken: Elaine Wilkins.  The Court: Is that the lady that's sitting

---

[9] Note that mother's counsel clarified what Vreeken said in the off-the-record discussion, and it did not include missed visits or phone calls, saying, "The only information she imparted to the Court and counsel was information that alleg-edly another social worker had observed which my client vehemently denies at this time." [Id. 3:25-4:5] No one disputed this characterization.

16

PLAINTIFF'S MOTION FOR NEW TRIAL
Hardwick v. County of Orange
U.S. District Court – Central District
Case No. SACV 13-1390 JLS(ANx)

next to you?  Ms. Vreeken: Yes.  The Court: Ma'am, is that what was
said? Ms. Wilkins: Yes." [Ex. E, 4:20-5:5]

The Court didn't ask a single other question of Vreeken or Wilkins.[10]  In
fact the Court concluded by saying to Deanna,

> "We are going to have a trial on the 28th.  And it may well be that you
> are right and you didn't say these things, but from the evidence I have
> *before me right now*, it looks like you are.  [ . . .] I have got to do that
> [removal] today, too, based on what I have *before me right now*." [Ex.
> E, 12:24-13:4, *emphasis added*]

The Court didn't talk about a missed visit when discussing what it had in

front of it "right now."  The Court pointed to nothing but the "statement"

Wilkins and Vreeken had completely fabricated.

---

[10] There was some discussion in this trial about mother calling around about
Hector Delgadillo, a visitation monitor, but that flame of the Judge's discontent
blew out quickly when the Judge realized in Court on February 15, 2000 that the
mother was NOT in court at the prior 2/8/17 hearing where he *believed he had
mentioned Delgadillo* (Ex. E, 9:10-12). The February 8, 2000 transcript (Ex. H)
is devoid of any statements about Hector Delgadillo.  And to the extent
Defendants might argue the incomplete visit of the 13th of February was the
difference that led to removal (to attempt to minimize the "but-for" cause
argument), the Court is reminded that Plaintiff also showed in closing argument
the portion of the Ex. C – 3/31/00 transcript in which the juvenile court clearly
stated that knowing if the children didn't want to visit their father because of
Mr. Delgadillo's presence *was relevant to the court*, and THAT was but another
piece of information withheld from the court by Vreeken. [*Id*. 39:2-41:8]  She
knew on February 15th of problems with Mr. Delgadillo and the "whispering
incident" at a prior visit, and felt it appropriate to change monitors. [Ex. A,
53:12-19, 54:5-18]  Yet she said nothing to the Court on February 17, 2000 to
apprise the Court of her concerns, or at any time. [Ex. E; Ex. C, 36:25-38:22]

17

## III. DEFENSE COUNSEL MISCONDUCT WARRANTS A NEW TRIAL

Rule 59(a) of the Federal Rules of Civil Procedure provides a court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Rule 59 does not specify the grounds on which a motion for new trial may be granted; instead, the court is "bound by those grounds that have been historically recognized." *Zhang v. Am Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir.2003) A new trial may be granted if, after weighing the evidence *as the court saw it*, "the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir.2007).

Additionally, the Court has broad discretion to grant a motion for new trial for "grievous misconduct" of trial counsel. *Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir.1987) A new trial should be granted where "the flavor of misconduct . . . sufficiently permeate[s] an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict." *Settlegoode v. Portland Public Schools*, 371 F.3d 503, 516-17 (9th Cir.2004). "A trial judge must determine where advocacy ends and appeals to bias and prejudice begin by examining the '*cumulative*

---

18

PLAINTIFF'S MOTION FOR NEW TRIAL
Hardwick v. County of Orange
U.S. District Court – Central District
Case No. SACV 13-1390 JLS(ANx)

*thrust* of [defendants'] counsel's argument.'" [*Ballarini v. Clark Equipment Co.*, 841 F.Supp.662, 666 (E.D.Penn. 1993) - new trial ordered due to prejudicial comments and improper conduct of the plaintiff's counsel over the objection of opposing counsel and <u>contrary to court instruction</u>, *emphasis added*)]

Where the case is close, the misconduct is related to an issue central to the case, and no steps were taken to mitigate the effects of the error, a new trial is warranted. *Caudle v. District of Columbia*, 707 F.3d 354, 361 (D.C.Cir.2013). In *Caudle*, the circuit court held that a new trial should be ordered due to a series of inappropriate comments by the plaintiffs' counsel asking the jury to put themselves in the plaintiffs' shoes. "Counsel has an obligation –as Justice Holmes put it – to 'play the game according to the rules.' Here, the appellees' counsel did not." [*Id.* at 363]

In Defendants' counsel's opening statement he went deeply into claims about involvement of three "730 evaluators" in the juvenile proceedings, who he claimed had various disparaging things in their evaluation reports about Deanna. Defendants' counsel did this, despite the fact that Plaintiff's claims had been narrowed to the damages from Defendants' conduct only as occurring through March 31st, and none of these "evaluators" (with the exception of Howell), had done anything with the Plaintiff or her family prior to that date that was not at

19

least two years prior!   As the evidence clearly showed during trial, it was indisputable that not a single document from these 730 evaluators (Howell, Johnson, Rogers) had ever been made part of the juvenile record, which consisted of reports written by social workers, including Vreeken.  [Dec.] Indeed, the evaluators' reports, other than a much earlier (in the family law case) evaluation by Dr. Howell, had not even occurred in the operative time period. Plaintiff's counsel attempted to object, but it was overruled.   Topping all of this off, Vreeken herself testified that on March 31, 2000, she had never spoken to Dr. Howell or Dr. Johnson. [Ex. C, 70:14-17]

The Court gave a "limiting instruction" addressing the narrowing of the scope of the trial only after this had occurred, an acknowledgment of sorts that such statements were improper.  However, the instruction included with regard to the statements of counsel in opening argument, that "certain evidence mentioned in the opening statement is now not relevant to your decision in the case[,] [f]or that reason you will not hear all of the evidence that was referenced in the opening statements." [Dkt 160, pp 21, Jury Instruction 17]  But the fact of the matter is that with the narrowing of the claims which occurred *before* opening statements, the repeated references to Drs. Howell, Johnson, and Rogers were never relevant, and the objections made at the time should have been

PLAINTIFF'S MOTION FOR NEW TRIAL
Hardwick v. County of Orange
U.S. District Court – Central District
Case No. SACV 13-1390 JLS(ANx)

sustained.

Then *during the trial*, Defendants' counsel made repeated efforts to introduce evidence of the opinions, conclusions, and/or findings of these after-the-fact 730 evaluations.  On one occasion, immediately after a discussion with the Court outside the presence of the jury, during which Defendants' counsel was expressly told that he would not be allowed to go into these areas, he literally asked questions covering the prohibited matters – and like so many questions Defense counsel asked they were loaded with the "facts" he wanted to get across to the jury – not less than four times in a row!  Plaintiff objected, and the Court sustained the objections, but the continued practice of loading the "question" with the points – irrelevant or not – that Defendants' counsel wanted to convey – went on the entire trial!  At no point was Defendants' counsel admonished about this conduct.  Indeed, when Plaintiff's counsel early on brought up – by objection - the leading and grossly hyperbole-filled questions of Defendants' counsel, he was still allowed to continue time after time after time with questions in which he inserted facts without foundation and expressed as fact, whether fact at all, and/or whether or not a fact in evidence!   The objections were overruled repeatedly.  [Dec.]

Then, in another discussion outside the presence of the jury just prior to the

PLAINTIFF'S MOTION FOR NEW TRIAL
Hardwick v. County of Orange
U.S. District Court – Central District
Case No. SACV 13-1390 JLS(ANx)

close of evidence and oral arguments, Defendants' counsel was admonished that he would not be allowed to argue the conduct of Deanna as a "cause" of the removal of the children, with the Court properly advising counsel that there was no "comparative fault" arguments allowed in 42 U.S.C. 1983 actions.  [Dec.]

No sooner, did oral argument commence than Defendants' counsel went directly to arguments exactly based on the conduct of Deanna as the cause for the children's removal.  Again, Plaintiff's counsel objected, two separate times, and each time the objections were again overruled. [Dec.]

The conduct of Defendants' counsel was by any measure nothing more than an "appeal[] to bias and prejudice," and was transparently the '*cumulative thrust,*' of [defendants'] counsel's arguments.

Another stark example of the lengths to which Defendants' counsel would go to confuse the jury, was the handling of an issue regarding returning the children to Orangewood after they had been moved a few days before March 22nd, 2000 to a foster care placement with a lady named Cheryl Gibson. Defendants' counsel argued in opening statement that "mother" "Deanna" had insisted that the children be sent back to Orangewood; he made the same arguments during trial in his questioning.  [Dec.]  The transparent point was to make an argument that the mother's desiring that result meant Orangewood

22

couldn't be that bad for the girls. Yet, Defendants' counsel had included in the

many, many Exhibits submitted for possible use in the trial, the transcript of the

March 22nd, 2000.  But then when one looks at the transcript for March 22nd,

2000, which is included in the Declaration of Plaintiff's Counsel as Exhibit I,

you see that everyone, the County, the mother's attorney, the father's attorney,

and even the minor's attorney, agreed that the children should be moved back to

Orangewood for obvious reasons of transportation to the foster care placement

that was miles away from the parent's homes.  This was but another of the

deceitful presentations, repeated ad nauseum, by Defendants' counsel which

could have no other effect than to prejudice and confuse the jury!

All of this conduct led to a trial that was not fair, that cultivated a verdict in

contradiction to the clear weight of the evidence, and Plaintiff respectfully

requests that the Court order a new trial on all issues.

## III. <u>CONCLUSION</u>

On the basis of the foregoing arguments and evidence, Plaintiff respectfully

requests that this Court order a new trial on all issues.

**RESPECTFULLY SUBMITTED,**

Dated: July 5, 2017                     ____/S/ Robert R. Powell_____
                                        ROBERT R. POWELL, ESQ.
                                        Attorney for Plaintiffs

23